May it please the court. My name is Michael King. I'm from the Carney-Badley Spellman firm here in Seattle, and I'm here today on behalf of the plaintiff and appellant Laura Kelly. This appeal involves the requirements for bankruptcy relief from a student loan obligation, but the primary issue does not appear to be the substantive requirements for relief, so much as the standard of review to be applied to the findings of the bankruptcy courts. And today I'd like to focus on two points. One is to discuss the standard of review, and then two, to apply that standard of review to the bankruptcy court's findings in this case. Now, when discussing standard of review, we are, of course, dealing with so-called Brunner factors, that case log loss and the statutory requirement of undue hardship. There are three Brunner factors that must be established to show undue hardship, and the bankruptcy court found that Ms. Kelly had established each of them. This Court's recent decision in Hedlund, I submit, has clarified the standard of review. A bankruptcy court's Brunner findings are reviewed only for clear error. The Court's overall undue hardship determination is reviewed de novo and will be reversed if the bankruptcy court failed to consider all the Brunner factors. But if the bankruptcy court has considered all the factors, the matter becomes one of clear error review only. So let's look at the bankruptcy court's determinations in this case. I don't think there's any – there's no dispute as to the first two. There is no dispute as to the first two. The only one that there's a dispute is her efforts, her good-faith efforts. I agree. Absolutely. We know that she bought a new car and had her payments went up, $268, and she also moves in a new apartment, and she eats out every meal. She doesn't cook for herself at all. What was wrong with the district court finding that this wasn't really a good-faith effort to pay her student loan as she was living with this lifestyle? Well, Your Honor, I agree that the evidence does show that she purchased a car, and the bankruptcy court found that that car was necessary for her to maintain a minimum standard of living under her circumstances. And she testified to an Achilles heel issue, a medical condition which suggests that she needed some relief from that. The bankruptcy court found that the car was a reasonable expense. As to meals, $16.16 a day isn't exactly the life of Riley, but the bankruptcy court also said that he thought that she could squeeze some more out of that expense. Now, the fact that you can squeeze some more out of an expense doesn't mean that that expense at the present level shows that you're not making a good-faith effort to try to minimize expenses. Let's look at clothing, for example, which is not something that was attacked by Ed Credit. She doesn't shop at Nordstrom. She testifies that she goes to St. Vincent de Paul's. I mean, this is somebody whose net monthly cash in the pocket monies are $3,000. That's not a lot. And I think the bankruptcy court correctly concluded that she was making a good-faith effort to try to minimize her expenses and to try to maximize her income. The things that you just mentioned, Judge Bea, go to the minimized expenses side, and that's one of the considerations. But we also look at efforts to maximize income. And this is somebody who has peeked out at the kind of income that she can earn. She has worked very hard. She has tried to find other possibilities for increased income. And she's really reached the maximum level of earnings that we can expect. You didn't mention the fancy apartment. The fancy apartment, Your Honor, a more expensive apartment, was purchased, was rented because she was concerned about security. She had had a bad experience. She is a single woman. And so she chose to rent a slightly more expensive apartment off the ground level because she's worried about security. Now, again, these are all specific facts. Let's look at what the district court gave as a reason for saying, as a matter of law, it was clearly erroneous to find that she had made a good-faith effort to try to meet her obligation. Good faith, after all, state of mind, as Judge Easterbrook pointed out in the Krieger case. I mean, we're talking about something that is reflective of how you evaluate. No, no, wait a minute. I don't think that the district court ruled as a matter of law. I think what the district court found was that the bankruptcy court had committed clear error under the Hinkson rule. Either it looked at the wrong law or there was no facts on the record from which inferences could reasonably be drawn to support its conclusion. And the bankruptcy court gave three reasons. The bankruptcy court said, first of all, that my client's income would continue to increase in the future at the rate it had increased once she got that job with Seattle City Light, which was flat-out contrary to the specific facts found by the bankruptcy court that my client's income had capped out. There was no reasonable prospect of an increase. Now, I submit that the district court should have deferred to those historical factual determinations. Second, the district court said that my client could cut at least $500 more from her budget. The district court gave no explanation for how it reached that conclusion and ignores that the bankruptcy court made a very specific analysis, found that my client could squeeze money out of three specific areas, and that she was therefore capable of making a payment of $250 a month. There is an overlap here between what the bankruptcy court found as a matter of historical fact and what the bankruptcy court ended up ordering as a manner of partial relief, that she would have to make payments of $250 a month for a total of $20-some-thousand going towards her obligation. But the bankruptcy court found that requiring her to reduce her expenses more than that $250 was going to put a minimum standard of living in jeopardy. Now, again, I submit the bankruptcy court has the witness in front of it, has an opportunity to evaluate her credibility, has looked carefully by its discussion at these expense items, and has found that, yes, some savings are in order. But to say – Even if we consider, I mean, I guess the district court also looked at the amended J schedule in determining bad faith, I mean, the items there. It seems like she no longer is paying – was paying a car. The fact that she no longer is paying a car payment, does that factor into our analysis? It did factor into the bankruptcy court's analysis. It is why the bankruptcy court felt that her transportation was one of those three categories where the bankruptcy court felt that she would be able to squeeze some additional monies out of her expenses, which is – and the bankruptcy court arrived at the conclusion that a fair evaluation of that number was $250. Now, the district court just says, oh, she can save $500 a month and doesn't explain how it comes to that conclusion. Excuse me, I'm sorry. Oh, I'm sorry. The district court, I think, looked at this and said, you know, she was supposed to be making a payment of $1,000. She was offered a loan modification program where that would have been reduced to $350. $386 a month. $386. And the bankruptcy court, I guess, assessed and said, well, I've looked over everything to meet the minimum standard of living as required. I'm going to assess that you pay $250 to pay off $21,000 and then discharge the rest as being an undue hardship. And it seems like when somebody goes into bankruptcy and is asking for someone to discharge a loan the size that she had, granted based on her actions she let it get to $100,000 when the loan was originally $24,000, it just seems like it does cause pause. And I guess we have to consider, was it clearly erroneous for the bankruptcy court not to assess maybe a little bit more or much more in light of some of these expenses that you would normally think someone who's asking for that kind of forgiveness not to live by that standard. And it just makes me wonder whether the circumstances here really align with what Congress meant when it said student loan debt can be discharged for undue hardship. And I think considering these facts together, how is the bankruptcy court's determination not clear error? Well, Your Honor, the bankruptcy court concluded that my client could save more money and she could make payments of $250 a month, and she is making those payments. And when she's done making those payments, the $24,000 that the taxpayer is actually out will have been repaid in full. What we're talking about, what's at issue in this case, is some interest and mostly its penalties. And the bankruptcy court specifically found that under my client's circumstances, she couldn't afford the $386 a month. Where in the record would you say is the best evidence that shows that Ms. Kelly tried to adjust her expenses to be able to afford the $386 monthly payment? Well, she tried to adjust her expenses. She could not afford the $386 monthly. That was the bankruptcy court's conclusion. I mean, when you look at all of her expenses, when you look at the kind of clothes that she was buying, when you look at the fact that, yes, she would buy lunch and dinner, she was worried about spoilage, but she would often buy two lunches because it's cheaper. When you look at the fact that you have the bankruptcy court having looked at all of these expenses and is aware of what a minimum standard of living is in this urban area and concludes this person is making a real effort, she will end up repaying the taxpayer back. And I see my time is up. Well, but you're answering my question. Go ahead. All right. She will end up repaying the taxpayers back. But she's making $50,000 now. She's making $47,000 gross. She takes home in pocket $3,000 a month. And the bankruptcy court was saying that your expenses, presently at $3,000, can be where you can squeeze another $250 out, and I want you to pay that much back until you reach $20,000. And then you will have paid back $36,000 as a whole. And I mean to say that the bankruptcy court's finding here should strike you as the functional equivalent of a five-week-old unrefrigerated fish in the face and being that erroneous, I think what you would really be doing here is reweighing the evidence, which is what I think the district court did. And I see that my time has expired, and perhaps I might have a minute for rebuttal. Thank you. Thank you very much. Good morning. May it please the Court. Dan Bugbee of Garvey-Schubert-Bear for the respondent, Educational Credit Management Corporation. This is not undue hardship. This is a debtor with no dependents, no disability, fully employed, that takes a trip to Hawaii during her Chapter 13, buys a new car, has a gym membership, spends $120 a month on hair treatment. Were all these facts that you're reciting, Mr. Bugbee, known to the bankruptcy court? Yes, Your Honor, they're all known. And the bankruptcy court observed Ms. Kelly? The bankruptcy court observed Ms. Kelly. And the bankruptcy court is reviewed in this court for clear error, correct? Your Honor, one thing that I do want to make clear is that we are also challenging Prong 2 as well as Prong 3. The Prong 2 is the nays factors that a court must find to allow a Prong 2 finding or conclusion. And the Prong 2 under the Ninth Circuit is still reviewed de novo. It's a conclusion of law. While Hedlund does apply clear error to the overall good faith Prong, there's still a conclusion of law analysis done in undue hardship. And for Prongs 1 and Prong 2, it's still de novo review. But going to the Prong 2 very briefly. I thought the parties were in agreement that Prong 1 and Prong 2 were not challenged. No, Your Honor. What is Prong 2 and why do you challenge it? Prong 2 is the establishment of additional factors that must be established to show that the present inability to pay will be projected into the future. And then Enri Nyes. Do you think the price of living in Seattle is going to go down in the future? No, but I think her expenses will go down. Why? Well, her car payments were ending. That's $280 a month. Her attorney's fees were over. That's $150 a month. There's her public student forgiveness payment right there. But also there's the presumption that income is going to increase. It's called a rebuttable presumption in Enri Nyes. And that presumption puts the burden on the debtor, the burden of production to establish one of the Nyes' objective factors. The Nyes court says we don't want the bankruptcy court to engage in speculation. We want them to look and point to an objective. Why will the income increase? Because she's a civil servant and they always get increases? In 10 years her income had doubled. That's a stipulated fact in the record. That's the same job? Seven of those years was the same job. But it had steadily increased every year by thousands of dollars. In fact, the district court pointed out there's $4,000 increase in her income just in the time of her Chapter 13. Now, that requires the debtor to prove an additional factor, an additional objective factor exists. And the court goes through every Nyes factor. And what's amazing is every time the district court says it's either a neutral factor, in which case neither party has carried the burden, or it's a non-factor and it hasn't been established, like a disability or a dependent with a disability hasn't been established. So there's nothing to tip the burden of persuasion in favor of the debtor in a single Nyes factor. And the court acknowledges that and simply points to her age, but he said she had 20 years of work life left at 45. So then he points to her future income, but the Nyes test is what they're supposed to look at to predict future income. So there is not only whether it should be a de novo review of whether those factors equal, but even if it was clear error, there's nothing in the record, not a single finding that supports the additional circumstances prong. What is your best authority that we should apply a de novo standard of review as to the second element of Bruner, that is the question of whether in the future circumstances will change? Your Honor, the Roth case, which is a BAP case, does a very good job of going through it. It's pre-Hedlund, and I admit that Hedlund would overwrite it for its prong three analysis, but it talks about how conclusions of law, not errors of law, in other words if you don't apply the undue hardship, but the conclusions of law must be reviewed de novo. And that's the Ninth Circuit law in all conclusions of law reviewed de novo. What else? Is it a conclusion of law as to whether someone will earn more money in the future? That would be a finding of fact, Your Honor, but it would be a conclusion of law whether additional circumstances exist such that the state of affairs of the debtor will be projected into the future. But the projection of how a debtor will fare in the future depends on facts, doesn't it? You're right, Your Honor. And those underlying facts or those historical facts, as Roth calls them, are reviewed for clear error. But it's the totality of those facts and applying it to the legal standard, which is adopted in Bruner through Henry Panyon, the Ninth Circuit, that is the de novo analysis. But here the question is whether a civil servant will earn more money in the future. And her historic? Is that a matter of law? Do we de novo review that? Well, you know, it's funny. I think I'm missing something, so take me by the hand slowly. Absolutely, Your Honor. The finding of fact, you're correct, whether she'll make more in the future. And it is incorrect to say that bankruptcy court didn't find that. It found there would be no significant increase but found that there would be increases. And there had been historically increases in the stipulated facts between the parties in the joint pretrial order. It is the conclusion of law that the additional circumstances exist. And what are those additional circumstances that exist as a matter of law? There are none here. There's none that are pointed to. None at all. There's none, except for the age issue, which is called out, which again the bankruptcy court called this a neutral factor. She's a civil servant well into her 40s, and you tell me that she has not proved that her earnings will follow the trend of civil servants? No, I think she has, Your Honor. And that wasn't taken into consideration by the bankruptcy court? It wasn't, Your Honor, because it's a slow trajectory upward. While her expenses, I just pointed to two that are going to go down. And the presumption, again, the rebuttable presumption under Nye's is that she will have the ability to pay in the future unless she presents an objective factor that she can point to that runs contrary to that presumption. With respect to her good faith efforts, how do you distinguish her decision in Hedlund? Well, Hedlund is a case where they looked and they found that there was sufficient investigation. The most important factor that Nye Circuit says is the repayment options, the flexible repayment options. And here, there was actually an error of law in that the public loan student forgiveness program, which is established by CFR, was not acknowledged by the bankruptcy court. It said the only evidence it had of that was the debtor's own testimony that she didn't apply, wasn't able to take advantage of it because she was insolvent, which all young student loan debtors are insolvent and all bankruptcy debtors are insolvent. But insolvency is not the test. In the CFR, it just says you can't be in default and you have to be working for a municipality. And that, we have it stipulated she's not in default. And it was established that she's working for a government entity, municipality, state, federal. So she met the public loan student forgiveness program, yet she refused to consider it under her erroneous testimony of what the law is in this area, which the bankruptcy court accepted. That shouldn't have been accepted. At the very minute, at the very least, it has to be remanded for the public loan student forgiveness program to be considered because it's appropriate for judicial notice, it's a CFR provided, and she met every requisite. I guess I'm confused because I thought the bankruptcy court did consider, but decided that she, you know, she looked at it but thought it was going to be too much. And that's all that's required is that it be, you know, looked at. Well, the bankruptcy court said he didn't receive sufficient evidence except for her testimony that she was insolvent and thus ineligible for it. But she did in the transcript complain about being unable to make those payments pre-bankruptcy when she looked at it. But yet she filed bankruptcy and increased her expenses and then made Chapter 13 payments of $320, which is remarkably close to the amount that she complained she was unable to make. Is there some requirement that the testimony of one witness worthy of belief is not sufficient to make a finding? Your Honor, testimony of one witness is sufficient to make a finding. Why do you keep saying that the only evidence was her testimony? That's the only evidence and the judge believed it and he saw her? Why isn't that sufficient? A lay witness can't testify as to what the law says or what the law is. No, but she said I couldn't pay it because I was insolvent. No, she said she was ineligible under the law because she was insolvent. Right. Which is untrue. Insolvency is not even a requirement under the CFR, which we cited in our brief. And it, again, has the The judge made an error of law in accepting her testimony as lay opinion testimony, which was not sufficient to make a finding of ineligibility. And not even correct, Your Honor. So we're here.  Your Honor, she said that she should at least have been paying the $386, is that right? Your Honor, she should have at least considered it and looked at it fully. Okay, okay, that she should at least consider it. It seems that someone can look at the record and see that she did consider it, but just bear with me. Yes, Your Honor. And so you're saying that that's the amount that should have been determined by the court, is that right? Yes, Your Honor. And the court determined $250 was the appropriate amount. Yes, Your Honor. So are you saying that the difference between $250 and $386 is enough for us to say that the bankruptcy court was clearly erroneous? Your Honor, the $250 was done under the Saxman analysis. You can make your decision not under a mathematical calculation. But if you had to just answer yes or no, how would you answer that? I would answer it yes, Your Honor. There is expenses to minimize that was clearly error to not make her. We have the haircuts. We have the trips to Hawaii. We have the gym membership. We have the Netflix account. We have the Comcast cable. We have eating out every meal because peanut butter and jelly just isn't for her. That's not good faith. All right, thank you very much. Counsel, you have to have a minute for rebuttal. And I think you should address the issue, which I thought was not an issue, which is that prong two is also challenged. That's exactly where I was going to go. First of all, it is not de novo review. It is clear error review of the prong two determination, and that's the Rufino case. And there's no question about this. And second, there was plenty of evidence to support the bankruptcy court's determination that there was no objective prospect. You mentioned a case. Did you say Pino? Rufino. Rufino. Rufino. It's discussed fairly extensively in our reply brief, Your Honor. It's 245F31083. In fact, in that case, ironically, the party in my client's position lost because clear error on prong two was found. But it's still a factual question that's reviewed only for clear error. And the record here, I think, is very clear. If you look at ER 22 through 24, you will see the bankruptcy court's careful consideration of the objective indicators which show that my client wasn't going to be able to have no prospect of increased income. She was capped out. The last comment I will make and close with is this question of the PSLF program, which is the other repayment program. All I want to say there is there was no evidence to show that she would be able to be paying any less under that program than under the IDR program, which is the one that was $386, which the bankruptcy court found she couldn't afford. And, Your Honors, if there are no further questions, I thank the courts for its time and attention. Thank you very much. Thank you, counsel, for a very good presentation. The case of Kelly v. Educational Credit Management is submitted.
judges: Kobayashi, Bea, Murguia